IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DEWEY BEACH ENTERPRISES, INC., a Delaware Corporation, and RUDDERTOWNE REDEVELOPMENT, INC., a Delaware corporation, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 09-507-GMS |
| TOWN OF DEWEY BEACH, a municipal corporation of the State of Delaware; DELL TUSH, in her individual capacity; DAVID KING, in his individual capacity; DIANE HANSON, in her individual capacity and RICHARD HANEWINCKEL, in his individual capacity, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## **MEMORANDUM**

## I. **INTRODUCTION**

On July 10, 2009, the plaintiffs, Dewey Beach Enterprises ("DBE") and Ruddertowne Redevelopment, Inc. ("RRI") (collectively, the "plaintiffs") filed this action against the Town of Dewey Beach (the "Town"), Dell Tush ("Mayor Tush"), David King ("King"), Diane Hanson ("Hanson"), and Richard Hanewinckel ("Hanewinckel"). The complaint alleges: (1) violations of substantive due process under 42 U.S.C. § 1983 (Count I); (2) § 1983 violations of procedural due process (Count II); (3) § 1983 violations of the Equal Protection Clause (Count III); (4) regulatory taking (Count IV); (5) 42 U.S.C. § 1985 civil conspiracy (Count V); (6) 42 U.S.C. § 1986 failure to prevent actionable harm (Count VI); (7) First Amendment free speech and

petition violations (Count VII); (8) equitable and promissory estoppel (Count VIII, DBE against all defendants; Count IX, RRI against all defendants); and (9) abuse of official power and violation of substantive due process against the individual defendants (Count X-XIII).  (D.I. 1.) In connection with these allegations, DBE seeks compensatory and punitive damages, attorneys' fees, costs, pre- and post-judgment interest, and injunctive relief.[1]   On August 21, 2009, the Town filed a motion to dismiss the plaintiffs' complaint with respect to all counts. (D.I. 19.) On the same date, Mayor Tush, King, Hanson, and Hanewinckel (collectively, the "individual defendants"), also filed a motion to dismiss.  (D.I. 21.)  Presently before this court are the Town and the individual defendants' motions to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (D.I. 19, 21.)  For the reasons that follow, the court will grant the defendants' motions in part and deny them in part.

## II.   FACTUAL BACKGROUND

The following facts are taken from the plaintiff's complaint.  (D.I. 1.)

### A.   The Town of Dewey Beach

The Town of Dewey Beach, incorporated in 1981, is located in Sussex County, Delaware.  (D.I. 1 at ¶ 12.)  According to the terms of its charter, the Town operates under a "town manager" form of government.  (Id.)  Specifically, a Town Commission, comprised of five commissioners, acts as the Town's central governmental unit and is headed by a Town

---

[1] In connection with Counts I-III, V-VI, VIII-IX, DBE asks the court to "compel[] the [d]efendants to allow DBE to construct on the property a structure in conformity with the 35 foot plan, and to further construct a structure in excess of 35 feet in height pursuant to DBE's proposed Phase II and Phase III building permit applications." (D.I. 1 at ¶ 127.) Additionally, DBE seeks injunctive relief with respect to the individual defendants by requesting that the court "compel [each individual defendant] to recuse himself [or herself] from any and all matters relating to the property and/or DBE." (Id. at ¶¶ 209, 217, 232.)

Mayor who is required to act impartially in administering the Town's laws and regulations.[2]
(Id.) At all times relevant to the complaint, individual defendant Dell Tush served as the Mayor.
(Id.) Additionally, the Dewey Beach Planning Commission (the "P&Z Commission") is
comprised of five to seven members appointed by the Mayor and confirmed by the Town
Commission.[3] (Id. at ¶ 13.) The P&Z Commission's primary responsibility is to "investigate,
report and recommend changes to the zoning code in Dewey Beach," and to impartially handle
any other matters the Town Commission deems necessary. (Id.) As it relates to this matter, the
P&Z Commission was tasked with preparing a comprehensive development plan for the Town
that would, among other things, "best promote the health, safety, prosperity and general public
welfare" of the Town citizens. (Id.) The Town's Building Inspector, William Mears ("Mears"),
is responsible for reviewing building permit applications and is required to report to the Town
Manager, who acts as the Town's Chief Administrative Officer.[4] (Id. at ¶ 14.)

On June 29, 2007, the Town Commission adopted the 2007 Dewey Beach
Comprehensive Plan (the "Comprehensive Plan"). (Id. at ¶ 16.) The Comprehensive Plan,
which was developed by the P&Z Commission and the product of five years of public input and
public meetings, set forth three separate resort-business ("RB") districts, of which Ruddertowne,
owned by DBE, was classified in RB-1, the most intensely developed zoning district.[5] (Id. at ¶

---

[2] Diane Hanson and Richard Hanewinckel, two of the individual defendants, are members
of the Town Commission.
[3] Vice Chairman David King, another individual defendant, is a member of the P&Z
Commission.
[4] The Town Manager at all relevant time periods was Gordon Elliot.
[5] DBE purchased three adjoining properties between 1970 and 1988 which now are
referred to as Ruddertowne. (Id. at ¶ 20.) In 2007 the Ruddertowne property was sold to
Ruddertowne Redevelopment, Inc. ("RRI"). (Id.)

3

17.) The RB-1 district was developed to provide relaxed "bulk" (characterized as height and density) standards for property containing more than 80,000 square feet of adjoining area. (Id.) Ruddertowne was the only property that met these qualifications. (Id. at ¶ 18.) The plaintiffs indicate that the Town allowed the forty-two foot high Best Western Gold Leaf Hotel (the "Best Western") to be built in RB-2[6] despite the fact that it exceeded the thirty-five foot height limitation allowed by the pre-Comprehensive Plan Town Code, its single-use structure, and its failure to meet the 80,000 square foot parcel requirement. (Id. at ¶ 19.) The Delaware Office of Management and Budget certified the Comprehensive Plan on July 29, 2007, giving it "force of the law." (Id. at ¶ 16.)

### B.   The Conflict between DBE and the Town of Dewey Beach

On June 15, 2007, DBE released its Concept Plan[7] for the Ruddertowne property (the "Concept Plan") to the public. (Id. at ¶ 28.) The Concept Plan proposed a structure that would be sixty-eight feet in height, four feet shorter than the Lighthouse.[8] (Id.) Following seven meetings open to public comment, the Ruddertown Architectural Review Committee[9] (the "RAC") approved the Concept Plan by a vote of seven to two. (Id. at ¶ 29.) The Town

---

[6] The Comprehensive Plan designated the RB-2 zone as the "middle level of development intensity," which would have lower bulk standards than the RB-1 zone. (Id. at ¶ 19.)

[7] "The Concept Plan included a Welcome Center, a bayside boardwalk, public restrooms, a 120 room five-star hotel and condominium project, much needed additional public parking, a convention center and a 'funland' for children." (Id. at ¶ 23, 28.)

[8] The Dewey Beach Lighthouse is seventy-two feet high. (Id. at ¶ 25.) DBE indicates that "[h]istorically, the Town has not allowed any structure to exceed the 72-foot tall Dewey Beach Lighthouse" (Id.), and that RAC Chairman Michael Eisenhauer noted that "if [DBE] comes in inches below the Lighthouse, I think we'll be OK" (Id. at ¶ 24).

[9] The Ruddertowne Architectural Review Committee was created by the Town after DBE received its building permit for the Ruddertowne site. (D.I. 1 at ¶ 23.) The purpose of the RAC was to help facilitate communication between the Town and DBE, and to develop Ruddertowne in compliance with the Comprehensive Plan. (Id.)

4

Commissioners held a public hearing to introduce an ordinance allowing the Concept Plan to proceed, and subsequently sent the ordinance to the P&Z Commission for its consideration. (Id. at ¶ 30.)

The Town Code required the P&Z Commission to make its recommendation on the ordinance to the Town Commissioners within sixty days after the first meeting on the proposal, or the proposal is deemed approved. (Id. at ¶ 32.) The P&Z Commission did not set a meeting date immediately, however, which DBE attributes to the Commission's desire to ensure that the sixty day deadline would occur after the September municipal election.[10]  (Id. at ¶ 33.)  On October 19, 2007 the P&Z Commission voted to reject the proposed ordinance, and the Town Commission subsequently voted unanimously against the ordinance.[11]  (Id. at ¶ 34.)

## C.    DBE's Allegations as to the Individual Defendants

DBE alleges that during the P&Z Commission's review of the Concept Plan, certain Commission members wrongfully voted against the ordinance based on their own personal interests. (Id. at ¶ 36.) The Town charter designates the P&Z Commission as a quasi-judicial

---

[10] DBE stated that the September 2007 election of Commissioners was solely focused on the pending development of the Ruddertowne property.  (Id. at ¶ 50.)  Mayor Tush, Hanewinckel, and Hanson all promised that Ruddertowne would not be redeveloped as illustrated in DBE's Concept Plan. (Id.) During their campaign, DBE alleges that a distorted image altering the size of the Ruddertowne development was used to mislead the voters. (Id.)

[11] On October 20, 2007, the Town Commission made a motion to accept the P&Z Commission's recommendation to reject the proposed ordinance, and placed the motion on the Town's agenda for its November 10, 2007 meeting.  (D.I. 1 at ¶ 53.)  In an attempt to strike a compromise between the Town and DBE, Commissioner Walsh proposed an amendment to the ordinance at that meeting that would allow DBE to develop an alternative forty-eight foot structure—twenty feet shorter than the initial Concept Plan.  (Id. at ¶ 55.)  The Town Commission refused to consider the proposed amendment, denied DBE permission to make a presentation regarding its proposed ordinance or Commissioner Walsh's compromise, and subsequently voted against its Concept Plan. (Id.)

governmental body, and specifically disallows Commission members from reviewing any matter in which he or she has a personal or private interest. (Id. at ¶¶ 13, 31.) DBE alleges that this required impartiality was severely tainted by the conduct of King and Wilson. (Id. at ¶¶ 35-49.)

With respect to King, DBE alleges that he "actively participated in an extra-judicial campaign to defeat the . . . Concept Plan" by aggressively lobbying other P&Z Commission members to vote against the ordinance. (Id. at ¶¶ 38, 45.) Additionally, King initially refused to set a hearing date and repeatedly ignored the Public Integrity Commission (the "PIC") recommendation that he should recuse himself from considering the Ruddertowne property redevelopment. (Id. at ¶ 40-43, 47.) DBE alleges that King's actions were unanimously supported—despite the PIC's recommendation—by the Town Commission (Id. at ¶ 43), and that Mayor Tush separately voiced her support for King to remain in the process (Id. at ¶ 43). DBE further alleges that Hanson, Wilson, and Mayor Tush should have recused themselves from the Ruddertowne matters because each owns rental properties in the Town that would be adversely affected "should the Concept Plan be approved and built." (Id. at ¶¶ 36, 59-62.) DBE contends that these individuals wrongfully worked to defeat and/or voted against its proposed ordinance because of these personal interests. (Id.)

**D.     DBE's Additional Proposals**

In early November 2007, DBE proposed a second compromise which would allow it to build a thirty-five foot structure on the Ruddertowne property. (Id. at ¶ 67.) The Town, however, notified DBE by letter on December 24, 2007 that this alternative plan did not comply with the Dewey Zoning Code. (Id. at ¶ 75.) DBE sought clarification as to why their plan failed to comply with the Dewey Zoning Code, but did not receive a response. (Id. at ¶ 76.) On

6

January 23, 2008 DBE asserted their right to a hearing before the Board of Adjustment. (Id. at ¶ 77.) After several inquiries by DBE as to the hearing date, a meeting was ultimately scheduled for July 2, 2008. (Id. at ¶ 79.) The Board of Adjustment voted two to one in favor of denying the building permit as inconsistent with the Town Code (Id. at ¶ 84) in a decision later confirmed by the Superior Court of Delaware in *Dewey Beach Enter., Inc. v. Bd. of Adjustment of the Town of Dewey Beach*, C.A. No. S08A-08-002-ESB, 2009 Del. Super. LEXIS 286 (Del. Super. July 30, 2009).[12]

On April 4, 2008, DBE submitted building permit applications for Phase II and III of their Concept Plan. (Id. at ¶ 87.) Since that time, DBE indicates that it has submitted repeated written requests that the applications be processed, or in the alternative, placed before the Board of Adjustment. (Id.) To date, the Town has not processed DBE's applications or entertained their variance requests. (Id.)

## III.    STANDARD OF REVIEW

### A.    Fed. R. Civ. P. 12(b)(1)

An attack pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the jurisdiction of the court to address the merits of the complaint. *Lieberman v. Delaware*, No. Civ. A. 96-523 GMS, 2001 WL 1000936, at *1 (D. Del. Aug. 30, 2001). Such a motion may challenge the court's jurisdiction facially, based on the legal sufficiency of the claim, or factually, based on the sufficiency of jurisdictional fact. *Mortensen v. First Fed. Sav. & Loan*, 439 F.2d 884, 891 (3d Cir. 1977) (distinguishing standard governing each type of challenge); *see also Lieberman*, 2001 WL 1000936, at *1 (finding a facial challenge where the defendant did not dispute facts alleged

---

[12] DBE plans to appeal this decision to the Delaware Supreme Court.

in complaint that supported the court's subject matter jurisdiction).

## B.    Fed. R. Civ. P. 12(b)(6)

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The court must accept all factual allegations in a complaint as true and construe them in the light most favorable to the plaintiff. *See, e.g., Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Calloway v. Green Tree Servicing, LLC*, 607 F. Supp. 2d 669, 673 (D. Del. 2009). A complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957); Fed. R. Civ. P. 8(a)(2)). A complaint not need detail factual allegations, however, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). The plaintiff is required to make a "showing" rather than a blanket assertion of an entitlement to relief. *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556 n.3). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Id.*

(quoting *Twombly*, 550 U.S. at 556).

## IV.   DISCUSSION

The Town sets forth several grounds for dismissal in its motion to dismiss. (D.I. 19.) In addition, the individual defendants filed their own motion to dismiss. (D.I. 21.) The Town and individual defendants' motions to dismiss are considered separately below.

### A.   The Town's Motion to Dismiss

The Town's motion to dismiss (D.I. 19) sets forth nine grounds for dismissal of the plaintiffs' complaint. (D.I. 20 at 2.) Specifically, the Town argues that: (1) DBE's claims challenging the Town's denial of the RB-1 sixty-eight foot ordinance are unripe because DBE failed to seek a variance or other available remedy; (2) because a municipality cannot be held liable for a § 1983 claim under the respondent superior doctrine articulated in *Monell v. N.Y. City Dep't of Social Services*, DBE did not identify or attribute a wrongful custom or policy to the Town; (3) DBE's due process rights were not violated because the legislative and executive actions at issue are rationally based and do not shock the conscience; (4) DBE's equal protection claims fail because it does not identify a similarly situated party and the Town's actions were rationally based; (5) DBE's procedural due process claim fails both because DBE does not have a constitutionally protected property right and because there is no viable procedural due process claim for legislative acts; (6) no regulatory taking occurred because DBE has not sought a state remedy and viable uses of the property remain; (7) there is no actionable First Amendment claim because the Town did not engage in retaliation and would have reached the same determination irrespective of the party involved; (8) the state law estoppel claim fails because the alleged

9

damages are not recoverable in an estoppel claim under Delaware law; and (9) DBE's § 1985 and § 1986 claims fail because the complaint does not allege a conspiracy and no underlying constitutional violation exists.[13]   (Id.)  For the reasons that follow, the court concludes that DBE's claims are ripe for review.  The court will grant the Town's motion to dismiss with respect to Count III (Equal Protection) and Counts VIII and IX (Equitable Estoppel), and deny their motion to dismiss in all other respects.[14]

### 1.   *Ripeness of DBE's Claim*

The purpose of the ripeness doctrine is to ensure that a party does not bring a premature action before the court, and to require "abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine." *Cty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 164 (3d Cir. 2006) (quoting *Khodara Envtl., Inc. v. Blakey*, 376 F.3d 187, 196 (3d Cir. 2004)).  The parameters of the ripeness standard differ in the land-use dispute context depending on whether an ordinance is being "facially" challenged or challenged "as-applied." *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 191 (1985).  In the as-applied context, a constitutional claim is not deemed ripe until zoning authorities have the opportunity to "arrive[] at a final, definitive position

---

[13] In its Answering Brief, DBE waives both its claim under Count IV (regulatory taking) and Count V (civil conspiracy). (D.I. 26 at 9.)  Since DBE's civil conspiracy claim under 42 U.S.C. § 1985 has been waived, their claim for failure to prevent actionable harm under 42 U.S.C. § 1986 must also be dismissed. *See Clark v. Clabaugh*, 20 F.3d 1290, 1296 n.5 (3d Cir. 1994) ("In order to maintain a cause of action under § 1986, the plaintiff must show the existence of a § 1985 conspiracy.").

[14] The court denies without comment the Town's motion to dismiss with respect to DBE's *Monell*, First Amendment, procedural due process, and substantive due process claims.  For each of these claims, the court finds that the complaint contains allegations that are more than sufficient to survive a 12(b)(6) motion under *Twombly* and its progeny.

regarding how [they] will apply the regulations at issue to the particular land in question."[15] *Id.*
To this end, a land-use claim may be deemed premature if the party bringing suit fails to exhaust
alternative procedures available to it. *See Acierno v. Mitchell*, 6 F.3d 970, 974-75 (3d Cir. 1993).
This finality requirement does not pertain, however, to facial challenges on land-use regulations.
*Cty. Concrete Corp.*, 442 F.3d at 164. A facial challenge argues that any application of the
regulation—and, by extension, the regulation itself—is unconstitutional. *Id.*

The Town argues that DBE's complaint fails to state either a facial or an as-applied
challenge. With respect to a facial challenge, the Town argues that its decision not to adopt the
sixty-eight foot ordinance was a legislative decision that, absent evidence that the Town had "no
legitimate reason" for its decision, cannot be challenged. (D.I. 28 at 2.) The Town asserts that
its decision to deny the sixty-eight foot height ordinance was legitimate because such height
limitations in a municipality "are standard, and have been uniformly accepted as a legitimate act
of the governing body." (Id.) With respect to an as-applied challenge, the Town argues that the
court lacks jurisdiction to hear challenges to the Town's denial of DBE's sixty-eight foot height
ordinance because DBE has not "sought or received a variance from the thirty-five foot height
limitations in the Dewey [Town] Code." (D.I. 20 at 7.) Consequently, the Town argues, a final
decision has not been rendered and the finality requirement has not been met. (Id.) Moreover,
the Town asserts that because the Board of Adjustment and the Superior Court have already
established that the thirty-five foot height proposal in DBE's Phase I plan does not comport with

---

[15] The Supreme Court in this case articulated a second part to this test which requires that
the plaintiff "seek compensation through the procedures the State has provided for doing so."
*Williamson Cty. Reg'l Planning Com.*, 473 U.S. at 194. This requirement is applied only with
regards to a just compensation takings claim. *Cty. Concrete Corp.*, 442 F.3d at 169.

11

the Dewey Zoning Code, its alleged refusal to schedule an appeal hearing or zoning variance for Phases II and III of DBE's thirty-five foot applications is irrelevant because those proposals are moot. (D.I. 28 at 2-3.)

The court concludes that DBE's claims challenging denial of its sixty-eight foot height proposal present both facial and as-applied challenges that are ripe for review. As to the facial challenge, DBE alleges that the Town Code's thirty-five foot height restriction conflicts with the Comprehensive Plan, which: (1) provided for RB-1's designation as a dense zone adhering to a "bulk" standard and (2) carries the "force of law" because it was adopted unanimously by the Town Commission and certified by the State of Delaware. (D.I. 1 at ¶¶ 16-17; D.I. 26 at 11.) The Town correctly asserts that it has the authority to establish and enforce height restrictions as a governing body and to deny ordinances conflicting with such restrictions. Nonetheless, DBE's complaint sufficiently alleges that the Town's height restriction does not comply with the Comprehensive Plan, and thus is contrary to law. For these reasons, DBE adequately pleads a facial challenge to the height restriction.

For the as-applied challenge, DBE asserts the P&Z Commission deliberately delayed the meeting date to consider the sixty-eight foot height ordinance in order to postpone review until after the Town's election. (D.I. 1 ¶ 33.) DBE further asserts that the Town Commissioners presented misleading data regarding the size of DBE's proposed structure. (Id. at ¶ 50-51). DBE alleges that members of the P&Z Commission, including Mayor Tush, violated Town Code provisions forbidding members from reviewing proposals in which they have a personal interest. (Id. at ¶ 59-60.) In addition, DBE alleges that the Vice-Chairman of the P&Z Commission, King, continued to actively oppose the proposed sixty-eight foot ordinance despite repeated

12

requests from the PIC to recuse himself from consideration of the matter. (Id. at ¶ 41-47.) These allegations sufficiently support DBE's as-applied challenge.

DBE satisfies the as-applied challenge finality requirement for three reasons. First, the complaint indicates, and the Town seems to concede,[16] that a final decision has been made in connection with the Town Commission's decision to deny DBE's Phase I thirty-five foot proposal.[17] (D.I. 1 at ¶¶ 80-85.) Second, the Town Commission voted to deny DBE's sixty-eight foot height proposal on November 10, 2007. (Id. at ¶¶ 54-57.) Since that time, the Town has refused to consider DBE's alternate Phase II and Phase III proposals, rendering the Town Commission's denial of DBE's sixty-eight foot and thirty-five foot proposals final determinations with respect to the Ruddertowne property. (Id. at ¶¶ 87-88.) Finally, DBE has requested an appeal hearing on the Town Commission's refusal to consider its Phase II and Phase III proposals and has sought a variance for both proposals. (Id. at ¶ 88.) To date, the Town has not granted DBE's requests for variance review and appeal hearings with respect to Phases II and III.[18] (Id.) Other than seeking mandamus, which is not available in this case,[19] the

---

[16] *See* D.I. 28 at 3 ("[T]he Board of Adjustment and the Superior Court have already held that Phase I (the 35 foot portion) of the application violates the Code . . . .").

[17] DBE's complaint details that: (1) the Town rejected its Phase I thirty-five foot height proposal on December 24, 2007 (D.I. 1 at ¶ 75); (2) DBE sought clarification as to the reason for the Town's denial on January 15, 2008 and, after receiving no response, asserted its right to a hearing before the Board of Adjustment on January 23, 2008 (Id. at ¶¶ 76-77); (3) the Town's Board of Adjustment met on July 2, 2008 and affirmed the Town Commission's decision to deny DBE's proposal (Id. at ¶¶ 82-84); (4) DBE appealed the Board of Adjustment's decision to the Superior Court of Delaware on July 22, 2008 (Id. at ¶ 85); and (5) the Board of Adjustment's decision was likewise affirmed by the Superior Court on July 30, 2009 (D.I. 28 at 2).

[18] The Town argues that DBE cannot challenge its refusal to review DBE's Phase II and Phase III ordinances for two reasons. First, the Town indicates that because the "Board of Adjustment and the Superior Court have already held that Phase I (the 35 foot portion) of the application violates the Code, the issues relating to Phases II and III are moot." (D.I. 28 at 3.)

13

Town does not suggest any other courses of action that DBE could have taken to seek further review of its proposals. For these reasons, the court concludes that the finality requirement is satisfied. The court will therefore deny the Town's ripeness challenge to DBE's claims.

### 2.    *Equal Protection Claim*

The Equal Protection Clause of the Fourteenth Amendment provides that a state shall not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV.  In an equal protection challenge to a zoning ordinance, the district court reviewing a motion to dismiss must engage in a two-part inquiry to determine whether a plaintiff has sufficiently pled a claim.  First, the court must determine whether the use proposed by "the complaining party is similarly situated to other uses that are either permitted as of right, or by special permit, in a certain zone." *Congregation Kol Ami v. Abington Township*, 309 F.3d 120, 137 (3d Cir. 2002).  This inquiry requires that there be a high degree of similarity between the party bringing the claim and the claimed property that is receiving different or favorable

---

This argument is unavailing, however, because the Phase II and Phase III proposals present alternate proposals for the development of the Ruddertowne property, rather than a sequential development proposal building on Phase I's development that differ only in the height of the proposed development. (See D.I. 1 at ¶ 87; D.I. 26 at 11-12.)

Second, the Town urges that even if DBE's Phase II and III proposals are not moot, its remedy here is to seek mandamus to compel the Town to review its proposals. (D.I. 28 at 2-3.) This argument likewise fails. While the Town is correct that requesting mandamus is the appropriate action where a plaintiff seeks to compel performance, the Third Circuit has articulated that mandamus is only proper where "the object of a suit is to compel the performance of an obligation arising out of official station or imposed by law upon the [defendant];" the directed performance is simply "ministerial;" and the duty "sought to be enforced does not involve discretion." *See Capital Educators Ass'n v. Camper*, 320 A.2d 782, 786 (Del. Ch. 1974). Here, DBE is challenging the process by which the Town denied its sixty-eight foot and thirty-five foot height ordinances, and subsequently refused to review its alternate proposals. (D.I. 26 at 12.)   These claims are outside the scope of a mandamus remedy.

[19] *See supra* note 16.

14

treatment. *New Castle Cty. v. Wilmington Hospitality, LLC*, 963 A.2d 738, 743 (Del. Super. 2008); s*ee also ADB Monroe, Inc. v. Monroe Twp.*, C.A. No. 04-1412, 2008 WL 58876, at *9 (D.N.J. Jan. 3, 2008) (requiring that the plaintiff allege facts showing that it was treated differently than another entity who was "*prima facie* identical in all relevant respects") (citation omitted). Second, if the plaintiff adequately identifies such a similarly situated party, the plaintiff must then demonstrate that the ordinance causing such disparate treatment is not grounded in a rational basis. *Id.* Local governments have extraordinary power and discretion in zoning and controlling land use. *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 68 (1981).

The court concludes that DBE has failed to state an equal protection claim because DBE's allegations, if true, do not demonstrate that it is similarly situated to the Best Western and other buildings in the Town exceeding thirty-five feet in height. (D.I. 1 at ¶ 19.) The Best Western is located in a separate zoning district than DBE's property. (Id.) As DBE concedes in its complaint, there are no other properties located in RB-1 that satisfy the prerequisite size requirement necessary for dense or bulk development. (Id. at ¶ 21.) Furthermore, unlike the Best Western and other properties, DBE's property is classified as a mixed-use structure and its Concept Plan proposes a greater scale of development than the other properties. (Id. at ¶ 19.) The court therefore concludes that even taking the facts alleged in the complaint to be true, DBE's allegations are not sufficient to establish that it is similarly situated to the other cited properties. Consequently, DBE has failed to state an equal protection claim, and the court will grant the Town's motion to dismiss with respect to Count III.[20]

---

[20] Because the court concludes that DBE has failed to identify a sufficiently similar

15

### 3. *Estoppel Claim*

The doctrine of equitable estoppel generally applies when an innocent party detrimentally changes its position based on the conduct of another party. *Salem Church (Del.) Assoc. v. New Castle Cty.*, No. C.A. 20305-NC, 2006 WL 2873745, at *12 (Del. Ch. Oct. 6, 2006). The equitable estoppel doctrine may be enforced against a municipality under Delaware law. *Acierno v. New Castle Cty.*, No. C.A. 92-385, 2000 WL 718346, at *9 (D. Del. May 23, 2000). The doctrine will only be enforced against a municipality where the detrimental change in the plaintiff's position is "substantially inequitable" and where the doctrine must be applied to prevent "manifest injustice." *See Salem Church (Del.) Assoc.*, 2006 WL 2873745, at *12; *Delaware River and Bay Authority v. Delaware Outdoor Advertising, Inc.*, C.A. No. 15922, 1998 WL 83056, at *4 (Del. Ch. Feb. 20, 1998). Where circumstances are not "exceptional" and enforcement of the municipality's regulation is not "highly inequitable or oppressive," however, estoppel will not be granted. *Salem Church (Del.) Assoc.*, 2006 WL 2873745, at *12. Equitable estoppel can only be employed in response to the enactment of a zoning regulation where: (1) "a party, acting in good faith, (2) on affirmative acts of a municipal corporation, (3) makes expensive and permanent improvements in reliance thereon, and (4) the equities strongly favor the party seeking to invoke the doctrine." *Acierno*, 2000 WL 718346, at *9. Delaware courts will enforce equitable estoppel where the plaintiff has incurred significant expense implementing permanent improvements or where the zoning regulation forecloses all other viable uses of the plaintiff's property. *See id.* at *11.

---

property, it need not address whether the Town had a rational basis for establishing its height restriction.

16

The allegations in DBE's complaint are not sufficient to state a claim under the doctrine of equitable estoppel. According to the complaint, DBE purchased the Ruddertowne property because of its location in a favorable zoning district. (D.I. at ¶ 21.) Initially, DBE obtained a building permit, consistent with the zoning code, to use the Ruddertowne property solely for residential use. (Id. at ¶ 22.) DBE alleges, however, that per the Town's request it agreed to forego its proposed residential use of the property based on the Town's assurances that it could develop Ruddertowne as a mixed-use structure. (Id.) DBE further alleges that the Town Solicitor indicated that its thirty-five foot height plan complied with the requirement of the Dewey Zoning Code. (Id. at ¶ 70-72.) DBE claims that as a result of these assurances, it incurred significant expense in its efforts to implement the plan. (Id. at ¶ 71-72.)

DBE's complaint, however, fails to allege that the expenses it incurred were made in connection with permanent improvements to its property or that the Town's height restrictions have precluded alternative uses of the land. As noted in DBE's complaint, DBE has established restaurants on its property. (D.I. 1 at ¶ 2.) Consequently, even if the court reads, as it does, the complaint in the light most favorable to DBE, the complaint does not indicate that the defendants' actions and assurances have deprived DBE of all viable uses for the property. DBE also notes in its response to the defendants' motions to dismiss that it "has incurred massive expenses drawing up a concept plan, meeting with Town representatives to discuss this plan, conceiving and submitting several revised plans and attempting to secure their approval." (D.I. 26 at 32.) These expenses do not, however, indicate that DBE has directed its financial resources at making permanent improvements of the type protected by an equitable estoppel claim. The

17

court therefore will grant the Town's motion to dismiss Counts VIII and IX of the complaint.

**B.      Individual Defendants' Motion to Dismiss**

The individual defendants' motion to dismiss (D.I. 23) sets forth three grounds for dismissal of DBE's complaint. (Id.) Specifically, they argue that the court should grant their motion because the individual defendants are: (1) immune from suit under the *Noerr-Pennington* doctrine; (2) entitled to legislative immunity for all actions involving zoning ordinances; and (3) entitled to qualified immunity for all non-legislative actions.

**1.      The *Noerr-Pennington* Doctrine**

The *Noerr-Pennington* doctrine, established by the Supreme Court in *Eastern Railroad Conference v. Noerr Motor Freight* and *United Mine Workers v. Pennington*, provides that there is no cause of action where the action is "predicated upon mere attempts to influence the Legislative Branch for the passage of laws or the Executive Branch for their enforcement." *See Cal. Motor Transp. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) (citing *Eastern Railroad Conference v. Noerr Motor Freight*, 365 U.S. 127, 137 (1961)). This defense is based on the principle that "[t]he right of petition is one of the freedoms protected by the Bill of Rights" and "[i]n a representative democracy such as this . . . the whole concept of representation depends upon the ability of the people to make their wishes known to their representatives." *Id.* (quoting *Pennington*, 381 U.S. 657, 669-71 (1965). As such, where a cause of action is exclusively predicated upon petitioning of a government entity, a defendant may invoke this doctrine as a defense in order to be judged immune from suit. *See, e.g.*, *Mariana v. Fisher*, 338 F.3d 189, 199 (3d Cir. 2003). Here, the individual defendants contend that DBE's allegations against them are

18

derived from their decision to "hold[] a referendum on the height of buildings," and "request[]
that the Delaware General Assembly place a thirty five foot height limit in the Town Charter."
(Id. at 8.) Viewing DBE's claims through this lens, the individual defendants assert that the
current action is premised on their legislative petitions and, therefore, cannot be asserted against
them in accordance with the *Noerr-Pennington* doctrine. (Id.)

Conversely, DBE argues that the individual defendants' characterization of their claims
reflects these defendants' "attempt[] to slice and dice DBE's [c]omplaint into meaningless
slivers," to divert the court from viewing the totality of their conduct. (D.I. 26 at 39.) The court
agrees. DBE's claims are predicated on the totality of the individual defendants' actions—
encompassing an extensive series of actions allegedly taken by the defendants to prevent DBE
from redeveloping the Ruddertowne property[21]—rather than simply on the individual
defendants' decision to petition a legislative entity. (Id. at 39-40.) The individual defendants'
narrow characterization of DBE's complaint is unavailing. The *Noerr-Pennington* doctrine will
not shield these defendants from potential liability under these circumstances.

## 2. *Legislative Immunity*

It is well known in the law that federal and state legislators are immune from § 1983 suits
challenging the constitutionality of their legislative conduct. *See Larsen v. Senate of Com. of*

---

[21] According to DBE, the individual defendants "have engaged in precisely the abuses of
power that Section 1983 is meant to curtail." (D.I. 26 at 1.) Specifically, DBE alleges that these
actions include, but are not limited to: Mayor Tush's threat to fire the building inspector, Mears,
if he did not reverse his decision to approve the thirty-five foot proposal; Mayor Tush's decision
to reject the thirty-five foot proposal which is an illegal executive action; King's determination—
supported by the Town Commission—to "be a ringleader of the town's opposition to the
Ruddertowne redevelopment even after being admonished *three times* by the State Public
Integrity Commission." (Id.)

*Pa.*, 152 F.3d 240, 249 (3d Cir. 1998). This protection extends to local legislators like the individual defendants. *Bogan v. Scott-Harris*, 523 U.S. 44, 52 (1998). For legislative immunity to attach, however, it must be clear that the alleged conduct is "legislative" in nature. *Acierno v. Cloutier*, 40 F.3d 597, 610 (3d Cir. 1994). The Third Circuit has established a two step evaluation for determining whether legislative immunity is appropriate. First, the court must ascertain whether the conduct in question is "substantively legislative," such that it involves a "policy-making or line-drawing decision." *Id.* (citation omitted). Second, the court must determine whether the conduct is "procedurally legislative," to the extent that the action is "undertaken through established legislative procedures." *Id.* (citation omitted). If the conduct is both substantively and procedurally legislative, an award of legislative immunity is appropriate. *See id.*

In determining whether an act is substantively legislative, courts must look to the nature of the act, not the legislators' underlying motives or intent. *Bogan*, 523 U.S. at 54. In the zoning dispute context, the Third Circuit has stated that, "when zoning officials are enacting or amending zoning legislation, their acts are substantively legislative, and when they are enforcing already existing zoning laws, their acts are administrative, executive, or ministerial." *Cty Concrete Corp.*, 442 F.3d at 172. Courts are also aided in their analysis by evaluating how many people are affected by the official conduct. *See id.* In general, courts have found that "[a]cts affecting the entire community tend to be substantively legislative, while acts affecting only one or a small number of individuals implicate executive or administrative action." *Id.* Conduct by legislators "taken prior to and independent of legislative action, even if those officials were

20

simultaneously members of the local legislative body that ratified the conduct" will not enjoy the shield of absolute immunity. *Carver v. Foerster*, 102 F.3d 96, 102 (3d Cir. 1996).

DBE has pled conduct by the individual defendants that does not fall under the protection of legislative immunity. Although some of the defendants' conduct—such as amending the zoning code—was legislative, most of the conduct alleged in the complaint is not. For example, DBE alleges that the P&Z Commission deliberately delayed meetings to consider an ordinance that would allow them to move forward with their plans to develop the Ruddertowne property. (D.I. 1 at ¶ 33, 40.) DBE also alleges that King actively lobbied members of the P&Z Commission to vote against the ordinance, and that Mayor Tush threatened to fire Inspector Mears if he approved DBE's building permit application. (Id. at ¶¶ 45, 73.) Given these allegations, the court cannot say at this stage that the doctrine of legislative immunity should be applied.

### 3. *Qualified Immunity*

Qualified immunity is designed to protect government officials from civil liability for performing discretionary functions while acting in an official capacity. *See United Artist Theater Cir., Inc.*, 316 F.3d at 398. Whether a defendant is entitled to qualified immunity requires a two-step inquiry directed at assessing: (1) whether the defendant's acts violated a constitutional or statutory right; and (2) whether the violated right was "clearly established, or, in other words, 'whether it would be clear to a reasonable officer that this conduct was unlawful in the situation he confronted.'" *Curley v. Klem*, 499 F.3d 199, 206-07 (3d Cir. 2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). The two prongs of the qualified immunity analysis need not be determined sequentially. *See Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). Instead, "judges

21

of the district courts . . . should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

In the present action, DBE seeks to hold the individual defendants liable in their individual capacities for abuse of the "official power placed upon [them] in [their] official capacit[ies]" as Town Commission members and Town Mayor.   (D.I. 1 at ¶¶ 203-31.) Specifically, DBE identifies the following as the individual defendants' relevant conduct in connection with this claim: (1) Mayor Tush and Hanson participated in Ruddertowne matters despite their pecuniary interests; (2) King decided to continue his participation on the P&Z Commission despite three PIC advisory opinions indicating that he should recuse himself from this role; and (3) Mayor Tush's "actions in rejecting the thirty-five foot proposal." (D.I. 26 at 34-36.)  DBE further asserts that the individual defendants should be liable because DBE has "adequately alleged facts to demonstrate that the [i]ndividual [d]efendants violated its federal rights," and "the rights which the [i]ndividual [d]efendants violated were clearly defined at the time of the violation." (Id. at 34.)

At this stage of the proceedings, the court cannot determine whether the individual defendants are entitled to qualified immunity.  Numerous disputed issues of material fact remain regarding the constitutional violations alleged in DBE's complaint.[22]   The first prong of the

---

[22] Countering DBE's factual allegations, and in support of its contention that DBE has failed to establish a constitutional violation, the individual defendants assert that: (1) their alleged financial conflict of interest does not constitute a constitutional claim; (2) there is no prejudgment bias in this case and, even if the individual defendants predetermined that they were not in favor of DBE's proposed ordinance, "prejudgment of a zoning ordinance does not require disqualification under Delaware law"; (3) Mayor Tush's alleged interference with DBE's

qualified immunity analysis depends upon the resolution of these factual disputes. *See Monteiro*

*v. City of Elizabeth*, 436 F.3d 397, 405 (3d Cir. 2006) (holding that "when qualified immunity

depends on disputed issues of fact, those issues must be determined by the jury").[23]

   An appropriate order will be entered.

CHIEF UNITED STATES DISTRICT JUDGE

July **30**, 2010

___

conditional permit applications is "irrelevant" because DBE ultimately obtained its permit and, therefore, has suffered no injury; (4) the other allegations against Mayor Tush fail as a matter of law; (5) the individual defendants' failure to immediately schedule P&Z meeting dates is not actionable and was not intended to delay review; and (6) the recusal allegations against King do not undermine immunity. (D.I. 23 at 9-18.)

   [23] Since the court is unable to determine at this stage the nature and manner of the alleged violations of DBE's rights, it also cannot address whether such rights were clearly established. *See Giles v. Kearney*, 571 F.3d 318, 325 (3d Cir. 2009).

23

IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DEWEY BEACH ENTERPRISES, INC., a        )
Delaware Corporation, and RUDDERTOWNE   )
REDEVELOPMENT, INC., a Delaware         )
corporation,                            )
      Plaintiffs,                        )
                          )
      v.                                 )      C.A. No. 09-507-GMS
                          )
TOWN OF DEWEY BEACH, a municipal        )
corporation of the State of Delaware;   )
DELL TUSH, in her individual capacity;  )
DAVID KING, in his individual capacity; )
DIANE HANSON, in her individual capacity and  )
RICHARD HANEWINCKEL, in his individual  )
capacity,                               )
                          )
      Defendants.                        )
                          )

## ORDER

For the reasons stated in the court's Memorandum of this same date, IT IS HEREBY

ORDERED that:

        1. The Town's Motion to Dismiss is GRANTED IN PART AND DENIED IN
           PART.

        2. The individual defendants' motion to dismiss is DENIED IN PART AND
           RESERVED IN PART.

Dated: July 30, 2010

                                      CHIEF, UNITED STATES DISTRICT COURT